1
2
3
4
5
6                          IN THE UNITED STATES DISTRICT COURT

7                            FOR THE DISTRICT OF ARIZONA

8

9    Debra L. Harvey; et. al.,                )    No. CV 08-17-TUC-FRZ (HCE)
                                              )
10              Plaintiffs,                    )    **REPORT & RECOMMENDATION**
                                              )
11   vs.                                      )
                                              )
12                                            )
     Janet Napolitano, Governor; et. al.,      )
13                                            )
                Defendants.                    )
14                                            )
                                              )
15   _____     )

16

17         Pending before the Court is a Motion to Dismiss  pursuant to Rule 12(b)(6) of the

18   Federal Rules of Civil Procedure for failure to state a claim (Doc. No. 18)[1] filed by

19   Defendants Governor Janet Napolitano and Secretary of State Janice K. Brewer (hereinafter

20   "the State Defendants").  For the following reasons, the Magistrate Judge recommends that

21   the District Court grant the Motion to Dismiss.

22   **I.       PROCEDURAL BACKGROUND**

23         On January 9, 2008, Plaintiff Page Maier filed the instant action.  (Doc. No.1) In

24   addition to the State Defendants, Plaintiff also named Defendant Pima County Recorder F.

25   Ann Rodriguez in her official capacity.  Plaintiff moved to consolidate her case with

26   _____

27         [1]Defendants requested oral argument.  Upon review of the briefs, the Court has
     determined that oral argument is not required to resolve the pending motion and denies the
28   State Defendants' request.

1    *Coronado v. Napolitano,* CV 07-1089-PHX-SMM and such motion was denied.  (*See*

2    January 16, 2008 Order (Doc. No.47) *entered* in *Coronado,* CV 07-1089-PHX-SMM *and*

3    Doc. No. 20 herein).

4        On January 31, 2008, Defendant Rodriguez filed an Answer.  (Doc. No. 11) On

5    February 7, 2008, the State Defendants were granted an extension to respond.  (Doc. No. 17)

6    On February 20, 2008, the State Defendants filed the instant Motion to Dismiss (Doc. No.

7    18) and Plaintiff filed her Response on March 3, 2008 (Doc. No. 21).

8        On March 18, 2008, Plaintiff Maier filed an Amended Complaint which removed

9    Plaintiff Maier as a named party and substituted Deborah Harvey as the sole Plaintiff.  (Doc.

10   No. 25) Plaintiff's counsel informed the Court that "Plaintiff Harvey stipulates that the

11   Motion to Dismiss and the response thereto filed by Plaintiff Maier apply in all respects to

12   Plaintiff Harvey and the Amendment to the Complaint.  Plaintiff Harvey further stipulates

13   that Defendants may include in their reply to the response to the Motion to Dismiss whatever

14   arguments they may have concerning the Amendment, provided that these comments are

15   limited to asserting that the Amendment does not change the status of the Motion to

16   Dismiss...."  (Doc. No. 28) Thereafter, on March 20, 2008, the State Defendants filed their

17   "Reply in Support of Motion to Dismiss" (Doc. No. 26).

18       Pursuant to Fed.R.Civ.P. 15(a), Plaintiff may amend the complaint "once as a matter

19   of course...before being served with a responsive pleading...."  Fed.R.Civ.P. 15(a)(1)(A).

20   The State Defendants' Motion to Dismiss is not a responsive pleading within the meaning

21   of Rule 15(a).  *Breier v. Northern Calif. Bowling Proprietors' Ass'n.,* 316 F.2d 787, 789 (9th

22   Cir. 1963).   However, there is no question that Defendant Rodriguez's Answer is a

23   responsive pleading.  Nonetheless, "if the amendment affects all defendants or one or more

24   of those that have not responded, then it generally is held that a 'responsive pleading' has not

25   been served for purposes of Rule 15(a) and plaintiff may amend the complaint as of course

26   with regard to those defendants that have not answered."  Charles A. Wright, Arthur R.

27   Miller, Mary Kay Kane, 6 *Federal Practice and Procedure Civil* 2d § 1481.  Any effect the

28   First Amended Complaint may have upon Defendant Rodriguez is of no moment given that

1   on June 16, 2008, Plaintiff filed a Motion for Leave to File Amended Complaint (Doc. No.

2   31). "The primary effect of the proposed" amendment is to add Catherine M. Beddard as a

3   named Plaintiff. (Plaintiff's Motion for Leave to File Amended Complaint, p. 2) Plaintiffs

4   Harvey and Beddard unconditionally stipulated, *inter alia*, "that the proposed Amended

5   Complaint will not in any way change or alter the substantive claims raised in the original

6   Complaint...that the claims raised in the proposed Amended Complaint are identical to those

7   raised in the original Complaint...that Defendants' Motion to Dismiss, Plaintiff's Response

8   to the Motion to Dismiss, and Defendants' Reply...are fully and entirely applicable to

9   Plaintiffs Harvey and Beddard...." (Id. at pp. 3-4) The record reflects that Defendant

10  Rodriguez did not file an opposition to the proposed amendment. The State Defendants filed

11  a "Notice of Non-Opposition to Motion to Amend" and "re-urge[d] their pending Motion to

12  Dismiss as to the proposed Amended Complaint...." (Doc. No. 33) On August 27, 2008, the

13  Court granted Plaintiff's Motion for Leave to File Amended Complaint. The Second

14  Amended Complaint is hereinafter referred to as "SAC".

15  **II.     FACTUAL BACKGROUND**

16       Plaintiffs filed the instant action pursuant to 42 U.S.C. § 1983 challenging Arizona's

17  felon disenfranchisement scheme "for the denial of the vote to Plaintiffs and the consequent

18  failure to accord them the equal protection of the laws in violation of the Fourteenth

19  Amendment." (SAC, p.1) Plaintiffs "seek the right to vote in Arizona under 'the common

20  law felony theory'...." (Id.) Plaintiffs allege that they "have been convicted of more than one

21  offense which defendants consider to be felonies, but which were misdemeanors or

22  nonexistent at common law."[2] (Id. at p. 14) Plaintiffs allege that they have been denied the

23  right to vote because of such convictions and because they owe fines and restitution as a

24  result of their convictions. (Id.) Plaintiffs allege that "[t]hey have successfully completed

25  all terms of incarceration, parole, or probation." (Id. at p.15) Plaintiffs further allege that

26

27       [2]Plaintiffs do not specifically identify the offenses of which they stand convicted other
    than to say that "[t]hey have been convicted only of drug or other offenses which were not
28  felonies at common law." (SAC, p. 15)

1   they are residents of Pima County; are of voting age; are citizens of the United States and

2   Arizona; and they "would otherwise be entitled to vote..." but for the fact of their prior

3   convictions and the outstanding fines and restitution owed.  (Id. at pp. 14-15)

4       Plaintiffs request declaratory and injunctive relief and expenses, fees and costs

5   associated with this action.  (Id. at pp. 32-33)

6       The State Defendants have moved for dismissal of Plaintiffs' SAC pursuant to Rule

7   12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

8   **III.    STANDARD**

9       When resolving a motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6), all

10  allegations of fact set forth in the complaint are taken as true.  *Sanders v. Brown,* 504 F.3d

11  903, 910 (9th Cir. 2007).  However, conclusory allegations and unreasonable inferences are

12  insufficient to defeat a motion to dismiss.  *Id.*  To survive dismissal, the plaintiff must allege

13  "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

14  *Twombly,* __ U.S. __, 127 S.Ct. 1955, 1974 (2007).  That is, when all the allegations are

15  taken as true and construed in the light most favorable to the plaintiff, the factual allegations

16  pled "'must be enough to raise a right to relief above the speculative level.'"  *Williams v.*

17  *Gerber Products Co.,* 523 F.3d 934, 938 (9th Cir.  2008) (*quoting Bell Atl. Corp.,* __ U.S. __,

18  127 S.Ct. at 1965); *see also SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.,* 88

19  F.3d 780, 783 (9th Cir. 1996) (a claim may be dismissed because it lacks "a cognizable legal

20  theory" or because it fails to allege sufficient facts to support a claim).  "Once a claim has

21  been stated adequately, it may be supported by showing any set of facts consistent with the

22  allegations in the complaint." *Bell Atl. Corp.,* __ U.S. __, 127 S.Ct. at 1969.

23  **IV.    DISCUSSION**

24      The Fourteenth Amendment to the United States Constitution provides in pertinent

25  part that:

26      Section 1. ...No State shall make or enforce any law which shall...deny to any
        person within its jurisdiction the equal protection of the laws.

27

28      Section 2.  Representatives shall be apportioned among the several States
        according to their respective numbers, counting the whole number of persons

- 4 -

in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, *except for participation in rebellion, or other crime*, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

U.S.Const. Amend. XIV, §§ 1, 2 (emphasis added) (hereinafter referred to as "Section 1" or "Section 2" respectively).

With regard to voter qualifications, the Arizona constitution provides in pertinent part that "[n]o person who is adjudicated an incapacitated person shall be qualified to vote at any election, *nor shall any person convicted of treason or felony, be qualified to vote at any election unless restored to civil rights.*" Ariz. Const. art. VII §2 (emphasis added); (*see also* Motion, p. 3) ("Since Arizona became a state, its Constitution has limited the right to vote of convicted felons.") Additionally, under Arizona statute, "[a] conviction for a felony suspends..." several civil rights of the person sentenced including "[t]he right to vote", the right to serve as a juror, and the right to possess a gun or firearm. A.R.S. § 13-904 (A)(1)-(5). A felony is "an offense for which a sentence to a term of imprisonment in the custody of the state department of corrections is authorized by any law of this state." A.R.S. § 13-105(16); 2008 Ariz.Legis.Serv. ch.150, §1. A person convicted of a single felony automatically regains most[3] civil rights that were lost or suspended by the conviction if the person: (1) completes a term of probation or receives an absolute discharge from imprisonment; and (2) pays any fine or restitution imposed. A.R.S. § 13-912. Persons, such as Plaintiffs herein, who stand convicted of more than one felony but are not in prison or on probation or parole are not entitled to automatic restoration but must instead apply to the superior court wherein they were either sentenced, or discharged at the end of the term of

---

[3]The right to possess a weapon is not automatically restored. *See* A.R.S. §13-912(B). Additionally, "the right to vote of persons convicted of [forging or] counterfeiting election returns is not automatically restored." (Motion, p.4 n.3); *see also* A.R.S. §16-1011(C).

probation, for restoration of any civil rights which were lost or suspended resulting from the conviction.[4] *See* A.R.S. §13-905 (regarding persons convicted of two or more felonies and whose period of probation has been completed); A.R.S. § 13-906 (regarding persons convicted of two or more felonies and who have received an absolute discharge from imprisonment);[5] *see also* Ariz.R.Crim.P. 29 *et seq* (regarding restoration of civil rights for probationers). Whether to grant an application for restoration is within the discretion of the superior court judge by whom the person was sentenced or that judge's successor in office. A.R.S. § 13-908.

Plaintiffs contend that Arizona's disenfranchisement of that group of felons who stand convicted of "non-common law felonies" is not exempted by Section 2, cannot withstand the strict scrutiny standard of the Equal Protection Clause of Section 1, and thus, such disenfranchisement is unconstitutional. According to Plaintiffs, "[t]he common law felonies are treason, murder, manslaughter, mayhem, rape, arson, burglary, robbery, larceny, and sodomy. *Jerome v. United States,* 318 U.S. 101, 108 n.6 (1943). Drug and many other offenses which Arizona classifies as felonies are 'non[-]common law' felonies...sometimes called 'statutory' felonies, which were misdemeanors or nonexistent at common law." (SAC, p. 7; *see also* Response, pp. 10-11 (citations omitted)).

The State Defendants assert that Plaintiffs fail to state a claim because "Section 2 permits states to take away the rights of *all* felons to vote" and, therefore, does not distinguish between common law felonies and non-common law felonies. (Motion, pp. 6-7) (emphasis in original) *citing Richardson v. Ramirez,* 418 U.S. 24, 32 (1974)).

---

[4]In some instances, additional limitations apply to restoration of the right to possess a weapon. A.R.S. §§ 13-905(C), 13-906(C). Moreover, in some cases restoration of the right to possess a weapon is unavailable. *Id.*

[5]ARS §§ 13-905 and 13-906 were recently amended. *See* 2008 Ariz.Legis.Serv. ch. 301 §§44, 45. The amendments are not yet effective. However, even if the amendments were effective, they are not substantive and would not alter the instant discussion or outcome.

1    The U.S. Supreme Court "has made clear that a citizen has a constitutionally protected

2 right to participate in elections on an equal basis with other citizens in the jurisdiction."

3 *Dunn v. Blumstein,* 405 U.S. 330, 336 (1972) (citations omitted).  However, the Court has

4 also recognized that "[t]his equal right to vote...is not absolute; the States have the power to

5 impose voter qualifications, and to regulate access to the franchise in other ways."  *Id.*

6 (internal quotation marks and citations omitted).  Where a challenged statute has granted the

7 right to vote to some citizens but has denied the franchise to others, the U.S. Supreme Court

8 has examined "whether the exclusions are necessary to promote a compelling state interest",

9 *Id.* at 337 (citations omitted), i.e., "the State must show a substantial and compelling reason

10 for imposing..." the limitation at issue.  *Id.* at 335.  However, the U.S. Supreme Court has

11 declined to apply strict scrutiny analysis to a state statute excluding felons from the vote.

12 *Richardson v. Ramirez,* 418 U.S. 24 (1974) (upholding California's felon disenfranchisement

13 scheme).  In so holding, the *Richardson* Court determined that

14    *the exclusion of felons from the vote has an affirmative sanction in [Section]*
    *2 of the Fourteenth Amendment, a sanction which was not present in the case*
15    *of the other restrictions on the franchise which were invalidated in the cases*
    *on which respondents rely.*  We hold that the understanding of those who
16    adopted the Fourteenth Amendment, as reflected in the express language of
    [Section] 2 and in the historical judicial interpretation of the Amendment's
17    applicability to state laws disenfranchising felons, is of controlling significance
    in distinguishing such laws from those other state limitations on the franchise
18    which have been held invalid under the Equal Protection Clause by this Court.

19 *Id.* at 54 (emphasis added).  The Court further pointed out

20    we may rest on the demonstrably sound proposition that [Section] 1, in dealing
    with voting rights as it does, could not have been meant to bar outright a form
21    of disenfranchisement which was expressly exempted from the less drastic
    sanction of reduced representation which [Section] 2 imposed for other forms
22    of disenfranchisement...[Section] 2 is as much a part of the Amendment as any
    of the other sections and how it became a part of the Amendment is less
23    important than *what it says and what it means.*

24 *Id.* at 55 (emphasis added).

25    Plaintiffs contend  the legislative history of the Fourteenth Amendment, including

26 that cited by the *Richardson* Court, supports the conclusion that the reference to "other

27 crime" in Section 2 referred only to common law felonies.

28

1   The *Richardson* Court observed that "[t]he legislative history bearing on the meaning
2   of the relevant language of [Section] 2 is scant indeed...." *Id.* at 44.  The Court noted that
3   "the framers of the [Fourteenth] Amendment were primarily concerned with the effect of
4   reduced representation upon the States, rather than with the two forms of disenfranchisement
5   which were exempted from that consequence by the language with which we are concerned
6   here." *Id.*  Further, "the language 'except for participation in rebellion or other crime' was
7   never altered...." *Id.* at 45.  After review of what little legislative history there is, the Court
8   concluded that the phrase "was intended by Congress to mean what it says." *Id.* at 44; *see*
9   *also Id.* at 45 ("What little comment there was on the phrase in question here supports a plain
10  reading of it.")

11  When addressing the same issue Plaintiffs raise herein, this District Court likewise
12  examined the *Richardson* decision and other cases in reaching the conclusion that "[a] plain
13  reading of [Section] 2 admits of no distinction between common law and non-common law
14  felonies.  Thus, the language of [Section] 2 means what it says–persons convicted of crimes
15  may be excluded from the franchise." *Coronado v. Napolitano,* 2008 WL 191987, *8.
16  (D.Ariz. Jan. 22, 2008) (granting motion to dismiss because, *inter alia,* "the phrase 'other
17  crime' is not limited to felonies at common law.") This Court agrees.  A plain reading of
18  Section 2 suggests no distinction between common law felonies and non-common law
19  felonies.  *Id.*

20  Further, as pointed out in *Coronado*, "'[w]here the language is plain and admits of no
21  more than one meaning, the duty of interpretation does not arise, and the rules which are to
22  aid doubtful meanings need no discussion.'" *Id.* (*quoting Caminetti v. United States,* 242 U.S.
23  470, 485 (1917) *and citing Lamie v. U.S. Trustee,* 540 U.S. 526, 534 (2004)).  Consequently,
24  "Plaintiffs' argument finds no support in either a plain reading of [Section] 2 or principles
25  of statutory interpretation." *Id.*

26  Even if further consideration is given to Plaintiffs' arguments concerning legislative
27  history, such arguments do not alter the conclusion that Section 2 encompasses both common
28  law and non-common law felonies. Plaintiffs cite reconstruction-era legislation enacted

contemporaneously with the Fourteenth Amendment that permitted disenfranchisement: "'for participation in the rebellion or for felony at common law...'" (Response, p.7 (*quoting* "the Reconstruction Act" of Mar. 2. 1867, 14 Stat. 428 at §5[6])); and "'for such crimes as are now felonies at common law....'" (Id. at p. 8 *(quoting* the Readmission Act for Arkansas of June 22, 1868, 15 Stat. 71)(emphasis omitted)).[7] Because Congress was concerned that the readmitted states would misuse felon disenfranchisement laws to discriminate against African-Americans, Congress added additional language to the enabling acts specifying that the laws under which citizens were convicted resulting in disenfranchisement must be "equally applicable to all the inhabitants of said State." *Richardson,* 418 U.S. at 51-52; (*see also* Response, p.9; Reply, pp.6-7).

The *Coronado* court found that the above-referenced reconstruction-era legislation actually undermined the position that the "other crime" language of Section 2 was meant to apply to common law felonies only:

> First, it demonstrates that where Congress intended to specify common law felonies, it so stated.  Second, the acts cited by Plaintiffs dealt with the readmission of former Confederate states, whereas the Fourteenth Amendment applies to all states in the Union.  Thus the varying language need not be "harmonized" as Plaintiffs contend because the different provisions address different subjects...Assuming that [Section] 2 and the Reconstruction and Readmission Acts address the same subject, a plain reading of [Section] 2 "gives effect to both" provisions, as is the duty of the courts.  *Morton v. Mancari,* 417 U.S. 535, 551 (1974).

*Coronado,* 2008 WL 191987 at *8.

---

[6]*Richardson* explains that "[i]n March 1867, before any state was readmitted, Congress passed 'An act to provide for the more efficient Government of the Rebel States,' the so-called Reconstruction Act..." which established "the conditions on which the former Confederate States would be readmitted to representation in Congress." *Richardson,* 418 U.S. at 49

[7]"'Nine other former Confederate states were subsequently readmitted upon condition that they would never deprive persons of the right to vote 'except as a punishment for such crimes as are now felonies at common law.'" (Response, p.8 *(quoting Richardson*, 418 U.S. at 52)).

1    The *Coronado* court's reasoning is sound and equally applicable to Plaintiffs herein.

2  Plaintiffs had the benefit of the *Coronado* decision when responding to the State Defendants'

3  Motion. None of the arguments advanced by Plaintiffs compel this Court to reach a different

4  conclusion than that reached in *Coronado.*

5    The State Defendants also point out that the *Richardson* Court in upholding

6  California's felon disenfranchisement scheme did not distinguish between the types of

7  felonies of which the respondents to that case stood convicted. Yet, one of the respondents

8  had been convicted of felony drug possession which Plaintiffs herein characterize as a non-

9  common law felony. (Motion, p.7 (*citing Richardson,* 418 U.S. at 32 n.9)). Instead, the

10  Court noted without further comment the crimes of which the respondents were convicted

11  and went on to hold that Section 2 affirmatively sanctioned "the exclusion of felons from the

12  vote..." and applied that holding to all respondents before the Court. *Richardson,* 418 U.S.

13  at 54. The holding in *Richardson* "prompted another district court to note, in considering a

14  distinction between common law and non-common law felonies, 'the Supreme Court,

15  however, apparently gave no import to this distinction, and this court shall do the same.'"

16  *Coronado,* 2008 WL 191987at  * 8 (*quoting Perry v. Beamer,* 933 F.Supp. 556, 559-60

17  (E.D.Va. 1996) (granting motion to dismiss), *aff'd* 99 F.3d 1130 (4th Cir. 1996)). Moreover,

18  "'as the common law developed, the meaning of the word 'felony' changed.' *Meritt v. Jones,*

19  533 S.W.2d 497, 501 (Ark. 1976)." *Coronado,* 2008 WL 191987 at *8; *(see also* Reply, p.7)

20  ("The logical extension of Plaintiff's [sic] argument is that, as criminal sophistication and

21  methods have changed and states have enacted laws to combat them, e.g., various types of

22  cyber-crime...states would be powerless to disenfranchise those convicted of such felonies

23  if they weren't [sic] on the short list of common law felonies when [Section] 2 was adopted

24  by Congress and ratified by the states.")

25    Plaintiffs also advance broad policy arguments, such as upholding disenfranchisement

26  for non-common law felonies "would eviscerate constitutional protections of the right to

27  vote" (Response, p. 3) as well as permit disenfranchisement for "petty or minor offenses such

28  as traffic violations or jay walking." (Id. at p. 10) Yet, Plaintiffs have cited no support for

1    their contention that upholding Arizona's disenfranchisement of felons convicted of non-

2    common law felonies equates to  disenfranchisement for "petty or minor offenses such as

3    traffic violations or jay walking" (Id. at p. 10), nor do they claim they are disenfranchised for

4    committing such offenses.  Instead, the Arizona scheme applies only to felony convictions.

5    *See e.g. Green v. Board of Elections,* 380 F.2d 445, 451-452 (2d Cir. 1967), *cert. den.*  389

6    U.S. 1048 (1968), (dismissing challenge to New York's felon disenfranchisement statute as

7    meritless and observing that "...it can scarcely be deemed unreasonable for a state to decide

8    that perpetrators of serious crimes shall not take part in electing the legislators who make the

9    laws, the executives who enforce these, the prosecutors who must try them for further

10   violations, or the judges who are to consider their cases.")  Moreover, the Arizona scheme

11   provides for restoration of such rights.  *Compare Richardson,* 418 U.S. at 24 (Section 2

12   affirmatively sanctioned disenfranchisement scheme that permanently disenfranchised

13   felons).

14          Plaintiffs also argue that "the enforcement of felon disenfranchisement laws has

15   resulted in racial disparities at the ballot box..." (Id. at p. 16) which compel "re-examination"

16   and reconsideration of "felon disenfranchisement laws under the [E]qual [P]rotection

17   [C]lause...due to our changing and evolving society."  (Id. at p.15)  The State Defendants

18   aptly counter Plaintiffs' argument by pointing out that "[r]acial discrimination claims can and

19   have been made based on facts presented in specific cases concerning the enactment and

20   enforcement of felon disenfranchisement provisions."   (Reply, p.8 (*citing Hunter v.

21   Underwood,* 471 U.S. 222 (1985))  In *Hunter,* the Supreme Court upheld an equal protection

22   challenge to Alabama's disenfranchisement statute[8] based on the finding that the statute was

23   "motivated by a desire to discriminate against blacks on account of race and the section

24   continues to this day to have that effect."  *Hunter,* 471 U.S. at 233 The Court declined to

25

26          [8]The Alabama statute provided "for the disenfranchisement of persons convicted of,
     among other offenses, 'any crime...involving moral turpitude."  *Hunter,* 471 U.S. at 223 &
27   n.**.  The complainants had been convicted of the misdemeanor of presenting a worthless
     check, which the state maintained was a crime involving moral turpitude. *Id.* at 224.
28

1    consider whether the statute "would be valid if enacted today without any impermissible

2    motivation." *Id.* The *Hunter* Court further stated that "Section 2 was not designed to permit

3    the purposeful racial discrimination attending the enactment and operation of...[the Alabama

4    disenfranchisement statute] which otherwise violates [Section] 1 of the Fourteenth

5    Amendment.  Nothing in our opinion in *Richardson v. Ramirez,* ... suggests the contrary."

6    *Id.*

7        Moreover, although the *Richardson* Court itself rejected the challenge to the facial

8    validity of the California scheme at issue, the Court remanded for further proceedings with

9    regard to the "respondents' alternative contention that there was such a total lack of

10   uniformity in county election officials' enforcement of the challenged state laws as to work

11   a separate denial of equal protection..." because the state court had not previously addressed

12   such contention.  *Richardson,* 418 U.S. at 56.

13       Plaintiffs herein argue that non-common law felonies are exempted from Section 2.

14   Unlike cases such as *Hunter* and *Richardson*, Plaintiffs do not assert that the Arizona scheme

15   at issue was racially motivated or that it is enforced in a non-uniform manner so as to result

16   in "a separate denial of equal protection..."  *Id.; (See also* Reply, p.9).

17       "The early exclusion of felons from the franchise by many states could well have

18   rested on Locke's concept...that by entering into society every ...[person] 'authorizes the

19   society, ... the legislature thereof to make laws for him as the public good of society shall

20   require, to the execution whereof his own assistance (as to his own decrees) is due.'  A

21   ...[person] who breaks the laws ...[that person] has authorized ...[that person's] agent to make

22   for his [or her] own governance could fairly have been thought to have abandoned the right

23   to participate in further administering the compact."  *Green,* 380 F.2d at 451& n.7 (*quoting*

24   John Locke, The Second Treatise of Government (An Essay Concerning the True Original,

25   Extent and End of Civil Government) at §89).  Juxtaposed against this long-standing and

26   time-honored social contract are concerns   raised by Plaintiffs and characterized by

27   Defendants as "negative societal impacts" caused by felon disenfranchisement.  (Reply, p.

28   9; *see also* Response, pp. 13-15); *Richardson,* 418 U.S. at 55 (summarizing "contentions that

1    these notions are outmoded, and the more modern view is that it is essential to the process

2    of rehabilitating the ex[-]felon that he be returned to his role in society as a fully participating

3    citizen when he has completed the serving of his term.")  Like the *Richardson* Court, this

4    Court recognizes that such arguments are more appropriately "addressed to the legislative

5    forum which may properly weigh and balance them against those advanced in support of

6    [Arizona's] present constitutional [and statutory] provisions." *Richardson,* 418 U.S. at 55.

7    **V.    CONCLUSION**

8          For the above-stated reasons, the term "other crime" as used in Section 2 of the

9    Fourteenth Amendment makes no distinction between "common law" and "non-common

10   law" felonies.  Therefore, Plaintiffs, who allegedly stand convicted of "non-common law"

11   felonies are not exempt from application   of Section 2's affirmative sanction of felon

12   disenfranchisement and their claims alleging otherwise must fail.  Plaintiffs' challenge to the

13   Arizona scheme disenfranchising "non-common law" felons rises and falls on the success

14   of their argument that Section 2 encompasses only common law felonies.  Therefore, their

15   challenge to the state scheme necessarily fails as well.

16         The Court's conclusions also dispose of Plaintiffs' claims against Defendant

17   Rodriguez.  Defendant Rodriguez, Pima County Recorder, is responsible pursuant to Arizona

18   statute for the registration of voters in Pima County and for canceling the registration of

19   persons convicted of a felony.   A.R.S. §§ 16-163, 16-165, 16-166, 16-168 ; *see also* 2008

20   Ariz.Legis.Serv. ch.273 §§4, 5, 8 (reflecting 2008 amendments to A.R.S. §§16-163, 16-166,

21   16-168).  "As Plaintiffs fail to state a claim that the felon disenfranchisement statutes abridge

22   or deny their right to vote, Plaintiffs also fail to state a claim against Defendant[]

23   Rodriguez...for acting pursuant to [her] statutory directive." *Coronado,* 2008 WL 191987

24   at *9.

25   **VI.    RECOMMENDATION**

26         For the foregoing reasons, the Magistrate Judge recommends that the District Court

27   grant the Motion to Dismiss (Doc. No.18) and dismiss the Second Amended Complaint as

28   to all named Defendants without prejudice.

1    Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within

2  ten days after being served with a copy of this Report and Recommendation.  A party may

3  respond to another party's objections within ten days after being served with a copy thereof.

4  Fed.R.Civ.P. 72(b).  If objections are filed, the parties should use the following case number:

5  **CV 08-17-TUC-FRZ.**

6    If objections are not timely filed, then the parties' right to *de novo* review by the

7  District Court may be deemed waived.  *See United States v. Reyna-Tapia,* 328 F.3d 1114,

8  1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

9    DATED this 28th day of August, 2008.

10

11    _____

12    Héctor C. Estrada
      United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28